# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AMBER M. DUENSING,

        **Plaintiff,**

v.

CAROLYN W.  COLVIN,
**Acting Commissioner of Social Security,**

        **Defendant.**

Case No.  13-CV-2467-DDC

---

## MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II and Title XVI of the Social Security Act, as amended. Plaintiff has filed a brief (Doc. 9) seeking judicial review of the Commissioner's decision.  The Commissioner has filed a brief in opposition (Doc. 14) and submitted the administrative record contemporaneously with her Answer (Doc. 8).  When plaintiff filed her reply brief (Doc. 15), this matter became ripe for determination.  Having reviewed the administrative record and the parties' briefs, the Court affirms the Commissioner's decision.

## I.      Factual Background and Procedural History

Plaintiff applied for Social Security Disability ("SSD") benefits and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 18 U.S.C. §§ 401–434, 1381–1385, alleging disability beginning November 1, 2010.  (R. 11)  The Social Security Administration denied plaintiff's application on March 1, 2011 (*Id.* at 76–80), and again denied it upon reconsideration on June 15, 2011 (*Id.* at 84–92).  Plaintiff requested a hearing by

1

an Administrative Law Judge ("ALJ") (*Id.* at 93–98), who held a hearing on August 16, 2012 (*Id.* at 11, 22).  During that hearing, plaintiff amended the date of her disability onset to July 1, 2011. (*Id.* at 11, 29)  On September 19, 2012, the ALJ issued a decision denying plaintiff's application for SSD benefits because he determined that plaintiff was not disabled from July 1, 2011 through the date of the decision under sections 216(i) and 223(d) of the Social Security Act (*Id.* at 11–19).  42 U.S.C. §§ 416(i), 423(d).  The ALJ also denied plaintiff's application for SSI benefits for the same reason under section 1614(a)(3)(A) of the Social Security Act (R. 11–19).  42 U.S.C. § 1382c(a)(3)(A).

Plaintiff filed an appeal with the Appeals Council on October 12, 2012.  (R. 7)  The Appeals Council denied plaintiff's appeal on July 26, 2013.  (*Id.* at 1–5)  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review of the final decision denying her SSD and SSI benefits.

## II.     Legal Standard

### A.   Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards. *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); 42 U.S.C. § 405(g).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a scintilla," although it need not be a preponderance.  *Lax*, 489 F.3d at 1084 (citations and internal quotation marks omitted).  While the courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's.  *Id.* (citation and internal quotation marks omitted).  But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational."  *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted).  When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision."  *Id.* (citation omitted).  "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion."  *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis."  *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)).  But such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases.  *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing

3

the general rule set out in *Glass*).  Some errors are harmless and require no remand or further

consideration.  *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012);

*Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145

(10th Cir. 2004).

### B.  Disability Determination

Claimants seeking SSD and SSI benefits carry the burden to show that they are disabled.

*Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general,[11] the Social

Security Act defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disa-

bility."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (govern-

ing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental

security income)).  As summarized by the Tenth Circuit, this familiar five-step process is as

follows:

> Step one requires the agency to determine whether a claimant is presently
> engaged in substantial gainful activity.  If not, the agency proceeds to consider, at
> step two, whether a claimant has a medically severe impairment or impairments.
> . . . At step three, the ALJ considers whether a claimant's medically severe
> impairments are equivalent to a condition listed in the appendix of the relevant
> disability regulation.  If a claimant's impairments are not equivalent to a listed
> impairment, the ALJ must consider, at step four, whether a claimant's impair-
> ments prevent [the claimant] from performing [the claimant's] past relevant work.

---

[1]     The definition differs for minors and some blind individuals.  *See* 42 U.S.C. §§ 423(d)(1)(B)
(definition for some blind individuals); 1382c(a)(3)(C)(i) (definition for individuals "under the age of
18").

> Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)-(g). The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

## III.   Discussion

The ALJ found that plaintiff has the following "severe impairments:" fibromyalgia, disorder of the back, disorder of the heart, affective disorder, anxiety disorder, and PTSD. (R. 13) However, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets the severity of one of the listed impairments in 20 C.F.R. Part 404. (*Id.* at 13–14) Instead, the ALJ found that plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the work must be a simple, repetitive, routine job as stress free as possible, with an SVP of 2; she must be allowed a sit/stand option of 4 hours each at will; only occasional bending; no kneeling, crawling, crouching or squatting; no lifting from the floor level; work must be on a smooth level surface with no use of foot controls; no repetitive overhead lifting or reaching with the right shoulder; no repetitive movement of the neck; no extremes of hot or cold; and work must be in a controlled humidity area.

(*Id.* at 15) Based on that RFC, the ALJ determined that plaintiff was unable to perform any past relevant work. (*Id.* at 18) Still, based on plaintiff's age, education, work experience, and RFC,

the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 18)

Plaintiff challenges the ALJ's findings in four ways. She argues that (1) the ALJ erred as a matter of law by applying an incorrect legal standard; (2) the ALJ failed to assign weight to all the opinions of record; (3) the ALJ's determination of plaintiff's RFC is not supported by the substantial evidence of the record; and (4) the ALJ did not sustain the Commissioner's burden at step five. The Court addresses each argument in turn.

## A. The ALJ's Use of the "Preponderance of Evidence" Standard

Plaintiff argues that the ALJ imposed an improper legal standard in his assessment of the evidence. Plaintiff claims that the ALJ's use of a "preponderance of evidence" standard is not the correct legal standard. (R. 18) Instead, she contends, the ALJ should have applied the "substantial evidence" standard. But, as defendant correctly points out, the "substantial evidence" standard defines the standard of review that the Court must employ when reviewing the ALJ's decision. *Mays*, 739 F.3d at 571; *Lax,* 489 F.3d at 1084; 42 U.S.C. § 405(g). The "substantial evidence" standard does not apply to the ALJ's determination. Instead, the Commissioner's regulations require the "administrative law judge [to] base the decision on the *preponderance of the evidence* offered at the hearing or otherwise included in the record." 20 C.F.R. §§ 404.953(a), 416.1453(a) (emphasis added). Thus, the ALJ did not err by applying the preponderance of the evidence standard in his decision.

## B. The ALJ's Evaluation of Medical Opinions

Plaintiff next asserts that the ALJ failed to identify the weight he assigned to the medical opinions of the state agency nonexamining doctors and some of the consulting doctors. Specifically, plaintiff argues that the ALJ ignored the medical opinions of Dr. Singh, Dr.

Neufeld, Dr. Suansilppongse, Dr. Warren, and Dr. Fantz.  Defendant concedes that the ALJ's

decision fails to state the weight given to these medical opinions, but defendant argues that, even

if the ALJ had considered the medical findings of these five doctors, he would not have

concluded that plaintiff is disabled.  Thus, defendant argues, the ALJ's error is harmless and does

not require remand.

### 1.  Standard for Evaluation of Medical Opinions

The applicable regulations require the ALJ to consider all medical opinions.  *See* 20

C.F.R. § 404.1527(c).  The ALJ also must discuss the weight assigned to such opinions.  *See id.*

§ 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight

given to the opinions of a State agency medical or psychological consultant or other program

physician, psychologist, or other medical specialist, as the administrative law judge must do for

any opinions from treating sources, nontreating sources, and other nonexamining sources who do

not work for us.").

"Medical opinions are statements from physicians and psychologists or other acceptable

medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s) including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant]

can still do despite impairment(s), and [a claimant's] physical or mental restrictions."[2]  20 C.F.R.

§ 404.1527(a)(2).  The regulations identify three types of "acceptable medical sources":  (1)

---

[2]        This regulation reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case"—opinions about such issues do not constitute medical opinions under the regulations.  20 C.F.R. § 404.1527(d).  "[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."  Policy Interpretation Ruling Titles II & XVI:  Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96–5p, 1996 WL 374183, at *2 (S.S.A. July 2, 1996) (hereinafter "SSR 96–5p").  But such opinions "must never be ignored," and, when "evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors" set out in the regulations, 20 C.F.R. §§ 404.1527(c) and 416.927(d).  *Id.* at *3.

treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or have had "an ongoing treatment relationship" with the claimant; (2) nontreating sources, *i.e.*, medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) nonexamining sources, *i.e.*, medical sources who render an opinion without examining the claimant. *See id.* § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011). The Commissioner generally gives more weight to opinions from examining sources than to opinions from nonexamining sources. 20 C.F.R. § 404.1527(c)(1). And the Commissioner generally gives more weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* § 404.1527(c)(2).

### a. Treating Sources

The Commissioner will give a medical opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must consider these two factors when determining whether a treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citation omitted). First, the ALJ must consider whether such an opinion is well-supported. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If it has adequate support, then next the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id.*

And an ALJ "may decline to give controlling weight to the opinion of a treating physician where he articulate[s] specific, legitimate reasons for his decision." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and internal quotation marks omitted).

The ALJ's inquiry does not end by determining that a medical opinion does not deserve controlling weight. *See Krauser*, 638 F.3d at 1330; *Watkins*, 350 F.3d at 1300.

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Krauser*, 638 F.3d at 1330; *accord Watkins*, 350 F.3d at 1300–01.  Unless the ALJ gives the treating source opinion controlling weight, it must evaluate the medical opinion in accordance with factors contained in the regulations.  20 C.F.R. § 404.1527(c); SSR 96–5p, 1996 WL 374183, at *1, 3.  Those factors are

> (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (citation omitted); 20 C.F.R. § 404.1527(c)(2)–(6).  After considering these factors, the ALJ must give reasons in the decision for "the weight [that the ALJ] ultimately assigns the [medical] opinion."  *Watkins*, 350 F.3d at 1301 (citation and internal quotation marks omitted).  However, the ALJ need not apply a factor-by-factor analysis so long as the decision is "'sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'"  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300).  When an ALJ completely

9

rejects an opinion of a treating source, the ALJ must state specific and legitimate reasons for the decision. *Watkins*, 350 F.3d at 1301.

An ALJ must give a treating physician's opinion substantial weight "unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289–90 (10th Cir. 1995). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Id.* at 290 (citation and internal quotation marks and alterations omitted). A reviewing court may reverse and remand a Social Security case when the ALJ has failed to apply the correct legal standards when the ALJ weighed the opinion of a treating physician. *Id.* at 289. When an ALJ merely finds that an opinion from a treating physician is not entitled to controlling weight but fails to state clearly how much weight is given to the medical opinion with good reasons for the weight assigned, "remand is required." *Krauser*, 638 F.3d at 1330. But in other circumstances, the failure to address properly and weigh all opinions is subject to a harmless error analysis. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Consequently, absent inconsistencies between or among the medical opinions and the ALJ's RFC determination, any error in considering the opinions is harmless. *Keyes–Zachary*, 695 F.3d at 1161–62. And, where such inconsistencies exist, the courts may

> supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

10

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### b.  Other Sources

In addition to evidence from acceptable medical sources, such as licensed physicians and psychologists, the Commissioner "may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work."  20 C.F.R. § 404.1513(d).  In 2006, the Social Security Administration recognized "the growth of managed health care" and the increasing role played by non-acceptable medical sources, "such as nurse practitioners, physician assistants, and licensed clinical social workers," in treating and evaluating claimants.  *See* Titles II & XVI:  Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernment Agencies, SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006) (hereinafter "SSR 06–03p").  It thus issued SSR 06–03p to clarify how ALJs "consider opinions and other evidence from medical sources who are not 'acceptable medical sources' and from 'nonmedical sources.'"  *Id.* at *4.

"The distinction between 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources' is necessary for three reasons":  (1) evidence from an acceptable medical source is required to establish the existence of a medically determinable impairment; (2) medical opinions only come from acceptable medical sources; and (3) only acceptable medical sources can be considered treating sources whose medical opinions may be entitled to controlling weight.  *Id.* at *2.  Distinguishing between acceptable medical sources and other sources facilitates the application of the Commissioner's regulations establishing an

impairment's existence, evaluating medical opinions, and determining who qualifies as a treating source.  *Id.*

Licensed clinical social workers do not qualify as an acceptable medical source, even though they are medical sources.  *See id.*  Although "these 'other sources' cannot establish the existence of a medically determinable impairment," which requires "evidence from an 'acceptable medical source,'" other sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.*  And, while the regulations "do not explicitly address how to consider relevant opinions and other evidence from 'other sources,'" such opinions and evidence "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id.* at *3.  By requiring ALJs to consider other factors brought to their attention, the regulations require consideration of evidence and opinions from other sources.  *Id.* at *4 (citing 20 C.F.R. §§ 404.1527, 416.927).

When considering opinion evidence from other sources, ALJs must use the same factors used to weigh the opinions from acceptable medical sources.  *Id.* at *4–5.  Of course, not every factor applies in every case—the evaluation of opinions from non-acceptable medical sources depends on the particular facts in each case.  *Id.* at *5.  With respect to weighing such opinions, SSR 06–03p provides:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as . . . previously indicated in the preamble to [the] regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals."  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the

> medical opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.  Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules . . . .

*Id.*

Because ALJs must consider all relevant evidence in a case record, they must consider all opinions from all medical sources—acceptable or not.  *Id.* at *6.  SSR 06–03p explains the consideration given to opinions from "other sources."  *Id.*  It provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.  In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

*Id.*

### c.  Nonexamining Sources

Evidence from nonexamining sources such as state agency physicians and medical experts is considered opinion evidence.  20 C.F.R. § 416.927(e).  ALJs are not bound by nonexamining source opinions but must consider them, except for opinions about the ultimate issue of disability.  *Id.*  While the opinion of an agency physician who has never seen the claimant is generally entitled to little weight, the ALJ can accept the opinion of state agency physicians over that of treating physicians if the opinions of the state agency physicians are

consistent with the evidence in the record.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Barnhill v. Astrue*, 794 F. Supp. 2d 503, 516 (D. Del. 2011) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

### 2.  Analysis

Turning to the medical opinions at issue in this case, plaintiff argues that the ALJ erred by failing to identify the weight given to the medical opinions of five doctors—Dr. Singh, Dr. Neufeld, Dr. Suansilppongse, Dr. Warren, and Dr. Fantz.

### a.  Dr. Singh

The administrative record contains a Physical Residual Functional Capacity Assessment completed by Dr. Gurcharan Singh on December 30, 2010.  (R. 654–59)  Dr. Singh listed plaintiff's primary diagnosis as atrial tachycardia and determined that she could perform work within certain exertional limitations.  (*Id.* at 654–55)  Dr. Singh opined that plaintiff could lift and/or carry up to 50 pounds on an occasional basis and up to 25 pounds on a frequent basis.  (*Id.* at 655)  Dr. Singh also found that plaintiff could stand and/or walk for a total of 6 hours during an 8-hour work day and sit for a total of 6 hours during an 8-hour work day.  (*Id.*)  Dr. Singh also stated that plaintiff could perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling but should avoid concentrated exposure to extreme cold and heat, vibration, and hazards.  (*Id.* at 656–57)

The ALJ did not consider Dr. Singh's medical opinion in his decision and thus did not identify the weight given to it.  However, Dr. Singh's limitations are less restrictive than those imposed by the ALJ's RFC determination.  Dr. Singh opined that plaintiff could perform occasional lifting of 50 pounds and frequent lifting of up to 25 pounds.  These lifting restrictions meet the definition of "medium" work under 20 C.F.R. §§ 404.1567(c) and 416.967(c).  In

14

contrast, the ALJ concluded that plaintiff could perform only sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  Those regulations restrict lifting to no more than 10 pounds at a time and permit only occasional lifting of small articles.

The ALJ also determined that plaintiff could perform occasional bending, but that she could not kneel, crawl, crouch, squat, or reach with the right shoulder and needed to avoid exposure to extremes of hot and cold and work in a controlled humidity.  These findings are consistent with the limitations imposed by Dr. Singh.  Plaintiff also fails to explain why any additional limitations imposed by Dr. Singh "would conflict with sedentary jobs, for '[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.'"  *Mays*, 739 F.3d at 579 (quoting Policy Interpretation Ruling Titles II & XVI:  Determining Capability To Do Other Work—Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work, SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996)).

In sum, Dr. Singh's opinion is consistent with the ALJ's assessment of plaintiff's RFC.  Given this, the ALJ's failure to consider Dr. Singh's opinion or assign it weight is harmless.  *See id.* at 578–579 ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity.").

### b.  Dr. Neufeld

The ALJ considered the medical opinion of Dr. Jason E. Neufeld, who performed a consultative psychological evaluation of plaintiff on February 4, 2011.  (R. 16, 660–65)  The

ALJ noted that Dr. Neufeld found only mild deficits in plaintiff's attention and concentration and no gross memory defects.  (*Id.*)  Also, the ALJ acknowledged Dr. Neufeld's opinion that psychological deficits alone would not preclude plaintiff entirely from performing simple, unskilled work.  (*Id.*)  The ALJ, however, failed to state the weight assigned to Dr. Neufeld's opinion.  (*Id.*)

The ALJ erred by failing to assign a weight to Dr. Neufeld's opinion, but the Court concludes this error is harmless.  Nothing in Dr. Neufeld's opinion contradicts the ALJ's RFC determination.  To the contrary, Dr. Neufeld's opinion is consistent with the ALJ's RFC determination—both conclude that plaintiff is able to perform simple, unskilled work.  Indeed, Dr. Neufeld opined that plaintiff's psychological difficulties do not prevent her from (1) understanding and remembering simple instructions, (2) sustaining concentration, persistence, and pace in a work setting, and (3) maintaining appropriate social interactions with coworkers, supervisors, and the general public.  (R. 663)  The ALJ's failure to assign a weight to Dr. Neufeld's opinion is harmless.

### c.  Dr. Suansilppongse

Dr. Aroon Suansilppongse completed a Case Analysis, Psychiatric Review Technique, and Mental Residual Functional Capacity Assessment for plaintiff on February 12, 2011.  (R. 666–81)  Dr. Suansilppongse opined that plaintiff "has the mental capacity for simple work related activity with minimal limitation due to alleged pain and infrequent contact with the public."  (R. 666)

Dr. Suansilppongse found that plaintiff has "moderate" difficulties in maintaining social functioning and maintaining concentration, persistence, or pace and that plaintiff has had one or two repeated episodes of decompensation.  (R. 676)  Also, Dr. Suansilppongse determined that

16

plaintiff is moderately limited in her ability:  (1) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) to interact appropriately with the general public; (3) to accept instructions and respond appropriately to criticism from supervisors; (4) to get along with coworkers or peers without distracting them or exhibiting behavior extremes; (5) to respond appropriately to changes in the work setting; and (6) to set realistic goals or make plans independently of others.  (R. 680)

Plaintiff argues that the ALJ erred by failing to include these functional limitations in the RFC, and, specifically, the limitations on plaintiff's ability to complete a normal workday/workweek and interact with others.  While Dr. Suansilppongse checked boxes indicating moderate limitations in the functions described above, Dr. Suansilppongse also opined that:  (1) plaintiff is able to carry out simple instructions; (2) plaintiff's ability to sustain concentration and persistence or to complete tasks is minimally limited due to anxiety and depressive reaction as well as alleged pain; (3) plaintiff's ability to interact appropriately with supervisors, coworkers, or the public would be minimally limited due to social withdrawal and infrequent episodes of anger and panic attacks; and (4) plaintiff's adaptability in a routine work setting would be minimally limited due to anxiety and depressive reaction.  (R. 666)  And, as stated above, Dr. Suansilppongse opined that plaintiff "has the mental capacity for simple work related activity with minimal limitation due to alleged pain and infrequent contact with the public."  (*Id.*)

Thus, while Dr. Suansilppongse found that plaintiff's ability to perform certain functions is limited, Dr. Suansilppongse also opined that these limitations are *minimal*.  Dr. Suansilppongse's opinions do not conflict with the ALJ's RFC determination that plaintiff has

the capacity to perform sedentary work that is simple, repetitive, routine, and as stress free as possible.  Therefore, the ALJ's failure to consider Dr. Suansilppongse's opinion or assign it weight is harmless.

### d.  Dr. Warren

Dr. James N. Warren treated plaintiff on June 13, 2011, for back pain.  (R. 716)  Dr. Warren noted that an MRI of plaintiff's C-spine and x-rays of her lumbar spine were normal. (*Id.*)  Dr. Warren also stated that the progress notes show that plaintiff does not complain of pain and plaintiff did not have symptoms.  (*Id.*)  Dr. Warren concluded that there are no changes to the RFC dated December 10, 2010 (which was completed by Dr. Singh and described above). (*Id.*)

While the ALJ did not consider Dr. Warren's opinion in the determination, none of the statements in this medical opinion contradict the ALJ's RFC determination.  *See Mays*, 739 F.3d at 578–579 ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."). Thus, because no inconsistency exists, the ALJ's failure to consider Dr. Warren's medical opinion is harmless.

### e.  Dr. Fantz

Dr. Charles Fantz treated plaintiff on June 13, 2011, for her complaints about increased anxiety and depression.  (R. 717)  Dr. Fantz noted that there was no new mental medical evidence of record and no changes to mental activities of daily living.  (*Id.*)  Dr. Fantz also determined that there were no changes to the Psychiatric Review Technique Form/Mental Residual Functional Capacity Assessment dated February 12, 2011 (completed by Dr. Suansilppongse and described above).  (*Id.*)

18

The ALJ failed to consider Dr. Fantz's medical opinion in the determination, but, like the other opinions addressed above, Dr. Fantz's opinion does not contradict the ALJ's RFC determination.  Thus, the ALJ's failure to consider Dr. Fantz's opinion is harmless error.

### f.   Conclusion

The Court concludes that the ALJ's failure to assign weight to the five medical opinions described above is harmless error and does not require remand.  Thus, the Court finds no reversible error and denies plaintiff's argument on this point.

### C.   The ALJ's RFC Determination

Plaintiff next asserts that the ALJ's RFC determination lacks support from the substantial evidence of the record.  Specifically, plaintiff contends that the ALJ's RFC does not include any of plaintiff's mental limitations such as her ability to interact with the general public, coworkers, and supervisors, or her ability to deal with changes in a routine work setting.  Plaintiff argues that the medical source opinion evidence in the record supports these limitations, and so the ALJ improperly ignored or rejected them.  Plaintiff also argues that the ALJ's own finding that plaintiff has mild difficulties with social functioning support plaintiff's mental limitations.  (R. 14)  The Court addresses each of her arguments in turn below.

### 1.   The ALJ's Findings at Steps Two and Three

The ALJ found at steps two and three that plaintiff has "severe impairments" that include fibromyalgia, disorder of the back, disorder of the heart, affective disorder, anxiety disorder, and PTSD.  But the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets the severity for one of the listed impairments in 20 C.F.R. Part 404.  (R. 13–14)  In deciding that plaintiff's impairments do not meet the severity in Part 404's listing, the ALJ applied the "special technique," as 20 C.F.R. §§ 404.1520a(b)(2) and 416.920a(b)(2)

require.  (R. 14)  Using this technique, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)."  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The ALJ completes this task by rating the claimant's limitations in "four broad functional areas"— "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ then employs the functional-limitation ratings to determine the severity of the claimant's mental impairment(s). *Id.* §§ 404.1520a(d), 416.920a(d).  Finally, the ALJ must document his application of the special technique:  "the written decision must incorporate the pertinent findings and conclusions based on the technique . . . The decision must include a specific finding as to the degree of limitation in each of the functional areas . . . ."  *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

The ALJ properly applied this technique in his decision.  (R. 14)  In so doing, the ALJ found that plaintiff has mild difficulties in social functioning.  (*Id.*)  Plaintiff criticizes the ALJ for failing to include this determination in the RFC.  As defendant correctly points out, though, these findings are "not an RFC assessment but [instead] are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  Policy Interpretation Ruling Titles II & XVI:  Assessing Residual Functional Capacity in Initial Claims, SSR 96–8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996) (hereinafter "SSR 96–8p").  Moreover, the finding of a "mild" limitation in a claimant's social functions under this technique generally results in a conclusion that the impairment is "not severe."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). And an impairment that is "not severe" does "not significantly limit [a claimant's] physical or mental ability to do basic work activities."  *Id.* §§ 404.1521(a), 416.921(a).  Thus, the ALJ did not need to include in the RFC his finding at steps 2 and 3 that plaintiff has mild difficulties in social functioning.

20

The ALJ instead noted that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." (R. 14 (citing SSR 96–8p)).  He then noted that the subsequent RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (*Id.*)  Then, at steps four and five, the ALJ specifically considered plaintiff's mental impairments and concluded that the record evidence supported a finding that her mental impairments were not disabling. (*Id.* at 16 –17)  Thus, the RFC determination does not include any limitations based on plaintiff's mental impairments.

Plaintiff cites two cases as support for her argument that the ALJ erred by failing to include his own findings in the RFC.  But, in both cases, the courts concluded that the ALJ erred by failing to explain properly why the RFC did not include the claimant's mental limitations in the RFC.  *See Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2012) (concluding that the ALJ erred by failing to explain at steps 4 and 5 why he did not include any mental limitations in the RFC despite his previous assessment of mild limitations); *see also Mushero v. Astrue*, 384 F. App'x 693, 695–96 (10th Cir. 2010) (holding that the ALJ erred because he did not follow the "special technique" and thus did not apply the correct legal standard).  In contrast, here, the ALJ's analysis here was proper at each of the sequential steps, and the ALJ adequately explained why he did not include plaintiff's mental limitations in the RFC.  Thus, the ALJ's consideration of plaintiff's mental limitations in this case differs significantly from the flawed analysis identified in the cases plaintiff cites.  The Court therefore rejects plaintiff's argument that the ALJ erred by failing to include his conclusions at steps two and three in the RFC determination.

21

### 2.  Drs. Singh, Suansilppongse, and Fantz

Plaintiff again asserts that the ALJ erred by failing to explain and resolve the conflicts between his RFC and the medical opinions of Dr. Singh, Dr. Suansilppongse, and Dr. Fantz.  As described above, however, the medical opinions of these three sources do not conflict with the ALJ's RFC determination.  While the ALJ erred by failing to reference these opinions in his decision, the error is harmless.  Thus, plaintiff's argument does not demonstrate that the ALJ's RFC determination is unsupported by the substantial evidence of the record.

### 3.  Dr. Skirchak

Plaintiff next argues that the RFC determination is not supported by the substantial evidence of record because it conflicts with the opinions of Dr. Danielle Skirchak.  Dr. Skirchak treated plaintiff on two occasions—on March 4, 2011 and July 19, 2011—and completed a Mental Residual Functional Capacity Questionnaire on August 17, 2011.  (R. 765–70)  Dr. Skirchak opined that plaintiff had numerous limitations in her mental abilities to perform unskilled work.  (*Id.* at 767–68)  Dr. Skirchak also anticipated that plaintiff's impairments could cause her to be absent from work more than four days per month.  (*Id.* at 769)

The ALJ addressed Dr. Skirchak's medical opinion in his decision, but assigned it "minimal weight" because she treated the claimant on only two occasions, did not have a long term treating relationship with plaintiff, and her assessment was not consistent with other substantial evidence (including the credible assessment of Dr. Neufeld, the consultative examiner).  (*Id.* at 17)  Plaintiff argues that the ALJ erred by assigning Dr. Skirchak's opinion minimal weight.  The Court disagrees for two principal reasons.

First, plaintiff refers to Dr. Skirchak as a "treating" doctor (Doc. 9 at 35), but the record shows that Dr. Skirchak examined plaintiff only twice, and the ALJ determined that she did "not

have a long term treating relationship" with plaintiff.  (R. 17)  Thus, Dr. Skirchak was not a

"treating source" and her opinion is not entitled to controlling weight.  *See Doyal v. Barnhart*,

331 F.3d 758, 763 (10th Cir. 2003) ("A physician's opinion is . . . not entitled to controlling

weight on the basis of a fleeting relationship . . . the opinion of an examining physician who only

saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating

physician's opinion." (citation omitted)).  The ALJ did not err by assigning lesser weight to Dr.

Skirchak's opinion based on the limited treatment she provided plaintiff.

Second, the ALJ specifically addressed Dr. Skirchak's medical opinion in his decision

and explained the reasons he assigned it "minimal weight."  (R. 17)  As described above, the

ALJ specified several reasons he discounted Dr. Skirchak's medical opinion, including that Dr.

Skirchak treated plaintiff only twice, she did not have a long term treating relationship with

plaintiff, and her assessment was not consistent with other substantial evidence (including the

credible assessment of Dr. Neufeld, the consultative examiner).  This is a sufficient explanation

for the ALJ's assignment of "minimal weight" to Dr. Skirchak's opinion, and other substantial

evidence in the record supports the ALJ's assignment.  *See Doyal*, 331 F.3d at 764 (affirming

ALJ's rejection of a medical opinion because ALJ gave specific, legitimate reasons for rejecting

the opinion and ALJ determined that the medical opinion was not consistent with the evidence as

a whole).

Plaintiff also argues that the ALJ's consideration of Dr. Skirchak's opinion was

inconsistent with his consideration of Dr. Neufeld's opinion.  Indeed, the ALJ discredited the

opinion of Dr. Skirchak because she had treated plaintiff only twice, but, at the same time, the

ALJ gave greater consideration to Dr. Neufeld's opinion, referring to it as a "credible

assessment," although Dr. Neufeld had seen plaintiff only once.  Although Dr. Neufeld may have

23

examined plaintiff only once, the ALJ gave specific reasons for concluding that his medical opinion was credible, including other record evidence supporting Dr. Neufeld's conclusion that plaintiff's mental impairment did not limit her ability to concentrate and complete tasks.  (R. 16–17)  The ALJ also provided specific and legitimate reasons for discrediting Dr. Skirchak's opinion.  (*Id.* at 17)  The Court thus concludes the ALJ did not err in assessing these medical opinions because he explained sufficiently why he gave more weight to one set of opinions than the other.  *See*, *e.g.*, *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498–1500 (10th Cir. 1992) (affirming ALJ's decision rejecting the treating source's opinion and relying on the examining source's opinion because ALJ gave specific and legitimate reasons for its consideration of each opinion); *see also Kizer ex rel. Kizer v. Barnhart*, No. 04–1394–JTM, 2006 WL 681115, at *4 (D. Kan. Mar. 14, 2006) (affirming ALJ's decision to give less than controlling weight to the treating physician and substantial weight to the opinion of a state agency reviewing psychologist where ALJ made specific findings supported by the record for the weight given to each medical opinion).

For all these reasons, the ALJ did not err in his consideration of Dr. Skirchak's medical opinion.

### 4.  Dr. Oplotnik

Plaintiff also argues that the RFC determination is not supported by the substantial record evidence because it conflicts with Dr. Rita Oplotnik's medical opinions.  On August 24, 2011, Dr. Oplotnik completed a Physical Residual Functional Capacity Questionnaire.  (R. 847–50) Dr. Oplotnik opined that plaintiff, in an 8-hour day, is limited to walking one city block, sitting continuously for 15 to 20 minutes, and standing continuously for 15 to 20 minutes.  (*Id.* at 848) Dr. Oplotnik also determined that plaintiff would need to shift positions at will from sitting,

standing, or walking, and would require unscheduled breaks of 10 to 15 minutes.  (*Id.*)  Dr. Oplotnik further opined that plaintiff's condition would cause her to miss work more than three times a month.  (*Id.* at 849)  Dr. Oplotnik also placed limitations on plaintiff's ability to lift, turn her head, twist, bend, crouch, and climb ladders and stairs.  (*Id.* at 849–50)

The ALJ considered Dr. Skirchak's medical opinion in his decision, but assigned it "minimal weight" because, at the time she completed the questionnaire in August 2011:  (a) she had treated the claimant only since March 2011 during six visits; (b) she lacked a long term treating relationship with plaintiff; and (c) her assessment was inconsistent with other substantial evidence in the record including the numerous functional reports.  (*Id.* at 17)  Plaintiff argues that the ALJ erred by rejecting Dr. Oplotnik's opinion.  The Court disagrees.

Plaintiff also refers to Dr. Oplotnik as a "treating physician" (Doc. 9 at 36).  But the record will not abide plaintiff's description.  *See Doyal*, 331 F.3d at 763 ("A physician's opinion is . . . not entitled to controlling weight . . . merely because the claimant designates the physician as her treating source." (citation omitted)).  Here, the record shows that Dr. Oplotnik treated plaintiff six times over a six-month period.  The ALJ noted the limited extent of Dr. Oplotnik's treatment and determined, based on the record evidence, that Dr. Oplotnik did not have a long term treating relationship with plaintiff.  Based on the evidence in the record, the ALJ correctly concluded that Dr. Oplotnik was not a "treating source" and, therefore, her opinion is not entitled to controlling weight.  *See id.* ("A physician's opinion is deemed entitled to special weight as that of a 'treating source' when he has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment,' taking into consideration 'the treatment the source has provided' and 'the kinds and extent of examinations and testing the

source has performed or ordered from specialists and independent laboratories.'" (quoting 20 C.F.R. § 416.927(d)(2)(i), (ii))).

The ALJ also gave specific reasons he rejected Dr. Oplotnik's medical opinion, including its conflict with the other functional reports in the record. (R. 17)  As described above, Dr. Singh completed a Physical Residual Functional Capacity Assessment, and Dr. Suansilpongse completed a Mental Residual Functional Capacity Assessment.  Both of those assessments contain limitations that are significantly less restrictive than those in Dr. Oplotnik's opinion. Both Dr. Singh and Dr. Suansilpongse opined that plaintiff could perform medium or simple work with minimal restrictions.  As noted above, the ALJ erred by failing to assign weight to Dr. Singh and Dr. Suansilppongse's opinions, but that error was harmless because the medical opinions from these sources do not conflict with the ALJ's RFC determination.

The ALJ applied the correct analysis when he evaluated Dr. Oplotnik's opinion.  He gave sufficient explanation for assigning "minimal weight" to Dr. Oplotnik's opinion, and other substantial record evidence supports the reasons for this assignment.  *See Doyal*, 331 F.3d at 764. The ALJ did not err in his consideration of Dr. Oplotnik's medical opinion.

### 5.   Gretchen Eisentrager, L.S.C.W.

The ALJ also considered the medical opinion of Gretchen Eisentrager, a licensed clinical social worker who treated plaintiff, but he gave her opinion "minimal weight." (R. 17)  On June 26, 2012, Ms. Eisentrager completed a Mental Residual Functional Capacity Assessment for plaintiff. (R. 1334–36)  On that form, Ms. Eisentrager opined that plaintiff had "marked" limitations in her ability to:  (1) maintain attention and concentration for extended periods; and (2) travel in unfamiliar places or use public transportation.  (*Id.* at 1334–35)  Ms. Eisentrager also opined that plaintiff had "moderate" limitations in her ability to:  (1) work in coordination

26

with or proximity to others without being distracted by them; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (3) interact appropriately with the general public; and (4) respond appropriately to changes in the work setting.  (*Id.* at 1335)  Ms. Eisentrager also anticipated that plaintiff's impairments would cause her to miss work more than three times a month.  (*Id.* at 1336)

The ALJ gave Ms. Eisentrager's opinion "minimal weight" because her assessment contradicted other substantial evidence in the record, including the evaluation of Dr. Neufeld. (*Id.* at 17)  The ALJ also noted that Ms. Eisentrager, as a social worker, is not an "acceptable medical source" but instead constitutes an "other source."  (*Id.* (citing 20 C.F.R. § 404.1513)) The Court agrees.

As a licensed clinical social worker, Ms. Eisentrager is not "an acceptable medical source."  SSR 06–03p, 2006 WL 2329939, at *2.  Nevertheless, "'[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"  *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting SSR 06–03p, 2006 WL 2329939, at *3).  "[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) and § 416.927(d) apply equally to 'all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other [non-medical] sources.'"  *Id.* (quoting SSR 06–03p, 2006 WL 2329939, at *4).  Under SSR 06–03p, an ALJ must "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* (quoting

27

SSR 06–03p, 2006 WL 2329939, at *6).  Not every factor applies in every case—the evaluation of opinions from non-acceptable medical sources depends on the particular facts of each case. SSR 06–03p, 2006 WL 2329939, at *5.

Here, the ALJ appropriately considered Ms. Eisentrager's opinions and assigned them a weight.  His assignment is based on record evidence, and the ALJ found that Ms. Eisentrager's assessment conflicted with the other record evidence, including the medical opinion of Dr. Neufeld.  Indeed, Ms. Eisentrager opined that plaintiff had significant limitations in her ability to work.  This opinion conflicts with Dr. Neufeld's assessment, as well as the opinions of Dr. Singh and Dr. Suansilppongse, that plaintiff is able to perform simple work with minimal limitations. The ALJ did not err by explaining the weight it gave to Ms. Eisentrager's opinion or assigned her opinions the weight that he did.  Substantial record evidence supports this decision.

### 6.  Other Evidence in the Record

The ALJ also properly considered the other evidence in the record when he decided plaintiff's RFC.  In addition to the medical opinion evidence, the ALJ considered plaintiff's symptoms and the credibility of plaintiff's complaints.  (R. 15–16)  "An ALJ's credibility determinations are generally treated as binding on review."  *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1195 (D. Kan. 2007) (citing *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)).  The ALJ is in the best position to "'observe and assess witness credibility[,]'" and so the Court normally defers to the ALJ's credibility determination.  *Id.* (quoting *Casias*, 933 F .2d at 801). The ALJ's findings about "'credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

Here, the ALJ found that the self-imposed limitations allegedly caused by plaintiff's impairments were "not fully credible." (R. 16)  The ALJ considered plaintiff's complaints about her heart condition and back pain, but he concluded that her medical records did not substantiate her allegations. (R. 15–16)  The Court cannot say that the ALJ erred when he discredited plaintiff's complaints based on the lack of objective medical evidence to support them. *See Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987) (the lack of objective medical evidence supporting plaintiff's complaint may affect the weight given by the ALJ to plaintiff's subjective allegations).

The ALJ also noted that plaintiff was able to "better control" her fibromyalgia and the pain it caused with medication. (R. 15, 753–54, 758)  Similarly, the ALJ found that plaintiff's depression and anxiety improved with medication. (R. 16, 752–54)  The ALJ properly considered plaintiff's reported improvement in her symptoms after taking medication when he weighed the credibility of her allegations. *See Kruse v. Astrue*, 436 F. App'x 879, 886 (10th Cir. 2011) (affirming ALJ's determination that the objective medical evidence did not support plaintiff's subjective allegations of disabling pain because, among other things, plaintiff's condition improved with medication); *Jorgensen v. Chater*, 962 F. Supp. 1384, 1389 (10th Cir. 1997) ("Medical conditions which can be controlled with treatment are not disabling." (citing *Kelley v. Chater*, 62 F.3d 335 (10th Cir. 1995)).

The ALJ also discounted plaintiff's subjective allegations.  The physical therapy notes show that plaintiff experienced some improvement and a decrease in pain with that treatment, but she was discharged from that treatment in January 2012 for failing to follow up with that treatment. (R. 16, 1147)  Plaintiff argues that the ALJ erred when he considered her failure to complete physical therapy treatment because, before doing so, the governing law required the ALJ to:  inquire about the circumstances surrounding the failure to follow a prescribed course of

29

treatment; and determine whether the record evidence shows that the treatment will restore plaintiff's ability to work.  (Doc. 15 (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)) Plaintiff's reliance on *Frey* is misplaced, however.

*Frey* involved "circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (citing *Frey*, 816 F.2d 517; 20 C.F.R. § 404.1530; Program Policy Statement Titles II and XVI:  Failure to Follow Prescribed Treatment, SSR 82–59, 1982 WL 31384 (S.S.A. Jan. 1, 1982)).  The Tenth Circuit explained in *Apfel* that the ALJ had not denied plaintiff benefits because he failed to follow prescribed treatment; "[r]ather, the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling."  *Id.* at 1372–73 (citations omitted).  Likewise, here, the ALJ considered plaintiff's failure to complete physical therapy treatment when he determined the credibility of plaintiff's allegations about the intensity, persistence, and limiting effects of plaintiff's condition.  The ALJ did not err in his evaluation of this evidence.

Finally, the ALJ concluded that plaintiff's self-imposed limitations were not supported by the testimony of her sister and her boyfriend of eight years.  (R. 16)  Plaintiff's sister reported that plaintiff could take care of her children, prepare meals without assistance, shop for clothes and groceries, and visit others often.  (*Id.* at 248–51)  Plaintiff's boyfriend reported that she plays with the kids and dogs and also exercises when she has time.  (*Id.* at 211–224, 256–59)  The ALJ properly considered the other evidence in the record, along with the medical opinion evidence, in making his credibility determination.

In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence and based on correct rules of law. The ALJ thoroughly examined the record and determined that plaintiff has the ability "to perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a)." (R. 15) The Court therefore affirms the ALJ's RFC finding.

### D.  The ALJ's Application of the Commissioner's Burden at Step Five

In her last argument, plaintiff asserts that the ALJ erred at step five in the analysis by determining that the Commissioner had met her burden to prove that plaintiff could perform other work that exists in the national economy. At step five, the Commissioner bears the burden to show that a claimant is able to perform other work in the national economy. *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (citation omitted). This step requires that the ALJ consider whether, given a claimant's background and RFC, the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(g).

The ALJ may satisfy this burden with a vocational expert's testimony. 20 C.F.R. §§ 404.1566(e), 416.966(e). To constitute "substantial evidence," the ALJ must present the vocational expert with all of a claimant's physical and mental impairments before the vocational expert determines whether sufficient jobs exist in the national economy. *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). The ALJ may elicit testimony by hypothetical questions, but those questions must "'relate with precision all of a claimant's impairments . . . .'" *Id.* at 1492 (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)). When the ALJ's RFC findings are "adequately reflected in the ALJ's hypothetical inquiries to the vocational expert, the expert's testimony provide[s] a proper basis for adverse determination of [the] case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (citation omitted).

Here, the ALJ properly determined plaintiff's RFC and concluded, based on that RFC and plaintiff's background, that plaintiff was unable to perform her past relevant work. (R. 15, 18)  The ALJ recognized that the burden then shifts to the Commissioner at step five to show that plaintiff could perform "other work" that exists in significant numbers in the national economy. (R. 13)  The ALJ asked the vocational expert if an individual with plaintiff's RFC limitations could perform work that exists in significant numbers in the national economy.  (R. 59–62)  The vocational expert responded that such an individual could perform the requirements of other work.  (R. 60–62)  For example, he testified that plaintiff could work as a patcher, a touch-up screener, and an interviewer.  (*Id.*)

Plaintiff argues that the ALJ wrongfully relied on the vocational expert's testimony that she could perform these three jobs.  Plaintiff asserts that, while the RFC limits her to repetitive work, the job of interviewer is not repetitive.  Plaintiff also contends that, while the RFC limited plaintiff to a job "as stress free as possible," the jobs of touch-up screener and interviewer require her to meet precise standards and, thus, are stressful jobs.  Finally, plaintiff claims that all three jobs require frequent reaching, but the RFC precludes plaintiff from reaching with the right shoulder.

In asking the hypothetical question of the vocational expert, the ALJ described an individual limited to "sedentary work . . . in a simple repetitive, routine job."  (R. 59)  The ALJ also explained that the individual is limited to a job that is "as stress free as possible."  (*Id.*)  The ALJ also described an individual who has a problem with her right shoulder and is limited to "no repetitive overhead lifting or reaching with the right shoulder."  (*Id.* at 59)  No evidence exists showing that the vocational expert failed to consider these limitations in responding to the ALJ's question.

Moreover, the ALJ determined that no conflict exists between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") job descriptions.  The ALJ has an affirmative duty to inquire about any possible conflict between the vocational expert's testimony and the information provided by the DOT.  *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003) (citing Policy Interpretation Ruling Titles II & XVI:  Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00–4p, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000) (hereinafter "SSR 00–04p")).  Here, the vocational expert testified that his testimony did not conflict with the DOT. (R. 66)  And as the ALJ's decision confirms:  "Pursuant to SSR 00–4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (*Id.* at 19)  Thus, the ALJ fulfilled his obligations by determining that no conflict exists between the vocational expert's testimony and the DOT job descriptions.

In addition, nothing supports plaintiff's arguments that the DOT job descriptions conflict with the vocational expert's testimony.  Plaintiff's allegations that the job of interviewer is not repetitive and that the jobs of touch-up screener and interviewer are stressful are based on plaintiff's own reading of the job descriptions.  This provides no basis for reversal.  *See Beier v. Colvin*, No. 12–1300–CM, 2013 WL 4059180, at *4 (D. Kan. Aug. 12, 2013) (plaintiff's own interpretation of the DOT is a lay interpretation and insufficient to contradict the vocational expert's testimony); *see also Thongleuth v. Astrue*, No. 10–1101–JWL, 2011 WL 1303374, at *18 (D. Kan. Apr. 4, 2011) ("Neither the ALJ, this court, plaintiff, nor plaintiff's counsel are experts in vocational matters with the expertise to interpret the DOT contrary to the interpretation given by the VE.").  And, while the three jobs listed by the vocational expert may

require reaching, the RFC does not completely prohibit reaching—it only limits plaintiff to repetitive reaching with the right shoulder. *See Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (ALJ's determination that a plaintiff could perform jobs requiring frequent reaching did not conflict with the RFC limiting plaintiff to occasional overhead reaching because a job requiring frequent reaching does not necessarily require more than an occasional overhead reaching); *see also Bronson v. Astrue*, 530 F. Supp. 2d 112, 1187–88 (D. Kan. 2008) (RFC requiring claimant to "avoid overhead lifting and reaching" does not preclude a claimant from lifting and reaching that does not constitute overhead lifting and reaching).

The ALJ properly relied on the vocational expert's testimony that, given plaintiff's RFC, there were sufficient jobs in the national economy that plaintiff could perform. As a result, the Court rejects plaintiff's argument that the ALJ did not meet his burden to show that plaintiff could perform "other work." The Court finds no reversible error at step five.

## IV.   Conclusion

Plaintiff argues that the ALJ's decision that plaintiff was not under a disability as defined by the Social Security Act is not supported by the substantial record evidence and resulted from an application of incorrect legal standards (Doc. 9 at 1). After considering the briefs submitted and closely reviewing the administrative record, the Court rejects plaintiff's arguments. The ALJ found that plaintiff suffers from severe impairments. However, the evidence supports the ALJ's conclusion that plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) and that sufficient jobs exist in the national economy that she can perform. The Court affirms the ALJ's decision denying plaintiff SSD and SSI benefits.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security Disability and Supplemental Security Income benefits is affirmed.

**IT IS SO ORDERED.**

**Dated this 13th day of March, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**

**Daniel D. Crabtree**
**United States District Judge**